OPINION OF THE COURT
Eli Wager, J.
These motions by the defendants County of Nassau, Nassau *185 County Medical Center and Southside Hospital for an order vacating the findings of the medical malpractice panel of this court rendered January 13, 1989 and for other relief and for an order directing a deposition of a nonparty witness and plaintiffs’ cross motion for leave to serve an amended complaint are determined as follows.
In this medical malpractice action brought on behalf of an infant Kristina Gagliano by her parents Kenneth J. and Kathleen A. Gagliano and derivatively on their behalf, the defendant hospitals moved to vacate the findings of a medical malpractice panel held on January 13, 1989. The panel found liability as against both hospitals and further, found no liability as against the third-party defendant, Dr. Norman Still-man.
On November 8, 1988, the infant plaintiff Kristina Gagliano died at 11 years of age. Applications for letters of administration were made by the plaintiff’s father to the Surrogate’s Court, Suffolk County, in December 1988. Limited letters of administration were granted to Kenneth J. Gagliano as administrator of the estate of Kristina Gagliano on February 14, 1989 by the Surrogate of Suffolk County. On February 17, 1989 counsel for the plaintiffs wrote to all parties enclosing a copy of a death certificate and letters of administration and requested a stipulation of substitution amending the caption of the action to reflect the appointment of Kenneth Gagliano as administrator of his infant daughter’s estate.
It is conceded by the plaintiffs’ counsel that although the death of Kristina was known to him prior to the convening of the medical malpractice panel, this knowledge was inadvertently and erroneously not imparted to any of the defendants’ attorneys. The defendants’ attorneys, for their part, aver that they had no knowledge of the death of Kristina prior to the receipt of Mr. Pegalis’ letter dated February 17, 1989.
The defendant hospitals, against whom liability was found by the panel, now move to vacate that finding upon the well-established legal principle that "the death of a party divests the court of jurisdiction to render a judgment until a proper substitution has been made, so that any step taken without it may be deemed void, including an appellate decision. (Matter of Einstoss, 26 NY2d 181, 189-190 [1970]; Thompson v Raymond Kramer, Inc., 23 AD2d 746, 747 [1st Dept 1965].)” (Nieves v 331 E. 109th St. Corp., 112 AD2d 59, 60; see also, Bossert v Ford Motor Co., 140 AD2d 480 [2d Dept 1988].)
*186 In Nieves (supra), the Appellate Division, First Department, affirmed the judgment entered on a jury verdict after inquest where the coplaintiff wife had died prior to the inquest. No substitution on behalf of her estate was made prior to the entry of judgment. The Appellate Division endorsed the trial court’s nunc pro tunc substitution as a valid exercise of discretion upon two grounds. First, the court held that as between a surviving husband and his deceased coplaintiff wife there was "a clear identity of interest” which permitted retroactive remediation. (Supra, at 59.) Secondly and more significantly, the court held that the protesting defendants proceeded to inquest "with full knowledge of Mrs. Nieves’ death” and "waived any objection to the validity of the proceedings vis-á-vis the decedent’s causes of action” (supra, at 59). Having failed to raise an objection to the court’s jurisdiction until after the jury’s verdict and judgment, they were held bound by the judgment.
The within action is clearly distinguishable from Nieves (supra). At bar, the primary cause of action belonged to the now deceased infant. The parents’ actions are derivative. Can it be said that this relationship constitutes "the clear identity of interest” of husband and wife? Moreover, here there is in the absence of defendants’ knowledge of the decedent’s death no conscious waiver of the jurisdictional defect.
It has been held that in special circumstances, a court may validate the acts of persons who participated in litigation following a litigant’s death without formal authority, provided their relationship to the decedent was such that appointment as decedent’s personal representative was a foregone conclusion (Wichlenski v Wichlenski, 67 AD2d 944 [where the defect was a mere irregularity]; Kucher v Kucher, 60 AD2d 644 [where widow and daughter represented deceased father against a son]; compare, Hemphill v Rock, 87 AD2d 836 [where attorneys acted without specific authority]).
It is clear to this court that the moving defendants have seized upon this jurisdictional defect in the hope that a new malpractice panel might produce a different result — that they might be absolved of liability or receive a "no finding” determination. At a new panel it is likely that nothing will change. While it is also evident that plaintiffs will seek leave to amend the complaint to allege a cause of action for wrongful death, the essence of the matter before the new panel will be the same. What then of judicial duplication of effort, added cost and court delay that will inevitably result? Sadly, it appears *187 that all these must yield to the technical jurisdictional deficiency that confronts us.
At the time of the convening of the medical malpractice panel, plaintiffs’ attorney’s authority to act for the deceased Kristina had been terminated as a matter of law (Bossert v Ford Motor Co., 140 AD2d 480, supra; Homemakers, Inc. v Williams, 131 AD2d 636 [2d Dept 1987]).
All proceedings, including the panel convened prior to the appointment of a personal representative for the deceased, were automatically stayed (CPLR 1015, 1021; McLaughlin, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1021:l, at 223). The product of the panel’s efforts were, therefore, rendered null and void. A new panel must be convened. The defendants’ motions are, accordingly, granted.
At the oral argument it became evident that plaintiffs’ cross motion for leave to serve an amended complaint was lacking essential ingredients, to wit, an affidavit of a physician and a proposed amended complaint. On the court’s own motion, therefore, plaintiffs’ cross motion is severed and adjourned to the 14th day of April 1989. Plaintiffs are advised to furnish the necessary supporting affidavit and proposed amended complaint, or in the alternative, to obtain stipulation of all counsel to an amended complaint prior to that date.
Defendants’ motion for an order directing a deposition of a nonparty witness for the plaintiffs, Dr. Arnold Gold, is adjourned to April 14, 1989 at 9:30 a.m. on the court’s own motion. Plaintiffs, at oral argument, agreed to furnish the defendants with a current medical report of Dr. Gold which will likely obviate the necessity for a deposition. Counsel are directed to advise the court in this regard.